UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BERLIN VANARDO BROWN, | |
| Plaintiff, | CIVIL ACTION NO. 3:22-cv-01067 |
| v. | (SAPORITO, M.J.) |
| CCPM G. CLEMENS, et al., | |
| Defendants. | |

## MEMORANDUM

Appearing through counsel, the plaintiff, Berlin Vanardo Brown, has filed a federal civil rights complaint. (Doc. 1.) In his complaint, he names a long list of state correctional and parole officials as defendants, seeking an award of damages for a series of events that caused him to be incarcerated beyond his original anticipated parole date, although he was released from custody before the expiration of his maximum sentence. The defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. (Doc. 6.)

### I. Background

According to the complaint, Brown was incarcerated at SCI Dallas, a state prison located in Luzerne County, Pennsylvania, in 2020. On July 20, 2020, he was granted parole by the state parole board with an

anticipated release date of November 26, 2020. A few days later, on July 25, 2020, Brown received a misconduct for being in an unauthorized area, but he was told by officials at SCI Dallas that it would not affect his parole status.

On November 22, 2020, a few days before his anticipated parole release date, Brown tested positive for COVID and was quarantined at SCI Dallas. He subsequently developed symptoms of COVID as well.

On November 22, 2020, after he tested positive for COVID, a parole agent, defendant Patia, told him he would need to get a ride home on November 26, 2020, because he would not be permitted to travel on a Greyhound Bus due to his positive COVID test.

On November 25, 2020, Brown told Patia that he couldn't get a ride home, so he would wait until his quarantine period expired and then take the bus home.

While Brown remained in quarantine at SCI Dallas, he was informed that, as part of the state department of corrections COVID response plan, he and all other quarantined prisoners would be transferred to SCI Camp Hill, a state prison located in Cumberland County, Pennsylvania. On December 14, 2020, Patia told Brown that SCI

Camp Hill would honor his parole release date.

On December 15, 2020, Brown was transferred to SCI Camp Hill. Upon arrival, he was subjected to a strip search. Despite Brown's complaints, the correctional officer conducting the search declined to permit the inmates to use nearby stalls that were available for privacy.

Ten days after his arrival at SCI Camp Hill—on or about December 25, 2020, Brown's parole release date was "decertified" without notice or a hearing. On December 27, 2020, Brown filed a grievance about this decertification of his anticipated parole release date. In response, the grievance was denied and Brown was informed that his parole release date had been decertified due to his July 2020 misconduct and because he had not completed the "T.C. Violence" program. Brown appealed that grievance denial to the facility and statewide levels, where the response was upheld.

On March 15, 2021, Brown filed a grievance about the strip search that had occurred on December 15, 2020. On March 21, 2020, the facility grievance coordinator rejected the grievance as incorrectly filed, and she forwarded it to the prison's PREA (Prison Rape Elimination Act) coordinator for investigation. Brown appealed this grievance to the

facility and statewide levels for review as well, where the response was upheld.

On May 18, 2021, the PREA investigation resulted in a determination that his complaint about the strip search was unsubstantiated.

On April 26, 2021, Brown again filed a grievance about decertification of his parole release date, but the grievance was rejected as untimely. Brown appealed to the facility and statewide levels for review, but the rejection of this grievance was upheld.

On June 10, 2021, Brown filed a grievance alleging that his parole release date was decertified in retaliation for his complaint about the strip search, but the grievance was rejected as untimely. Brown appealed to the facility and statewide levels for review, but the rejection of this grievance was upheld.

On January 12, 2022, Brown was released on parole, 14 months after his original anticipated parole release date.

## II. DISCUSSION

Brown asserts several federal civil rights claims for damages in his counseled, three-count complaint. In Count 1, Brown asserts a § 1983

Fourteenth Amendment due process claim based on the rescission of his original parole release date, which resulted in his incarceration for an additional period of 14 months after that date. In Count 2, Brown asserts three separate § 1983 claims: (a) an Eighth Amendment claim based on the rescission of his original parole release date, causing him to serve an additional 14 months in prison, which he contends constituted cruel and unusual punishment; (b) an Eighth Amendment claim based on the strip search conducted on December 15, 2020; and (c) a First Amendment retaliation claim in which he contends that his parole release date was decertified in retaliation for his filing of a PREA complaint about the strip search. In Count 3, Brown asserts a disability discrimination claim under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

### A. Rescission of Anticipated Parole Release Date

The plaintiff claims that the rescission of his original anticipated parole release date without notice or a hearing violated his Fourteenth Amendment due process rights, and it also constituted cruel and unusual punishment in violation of his Eighth Amendment rights.

But it is well settled that the United States Constitution does not

create a protected liberty interest in a pre-release expectation of parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 10–11 (1979); *Jago v. Van Curen*, 454 U.S. 14, 21 (1981); *Stephens v. Chairman of the Pa. Bd. of Probation & Parole*, 173 Fed. App'x 963, 965–66 (3d Cir. 2006) (per curiam); *Wolfe v. Pa. Dep't of Corr.*, 334 F. Supp. 2d 762, 773 (E.D. Pa. 2004). It is true that a "parolee" possesses a vested liberty interest in his continued release on parole that cannot be taken away without affording the parolee certain minimum requirements of due process. *See Morrisey v. Brewer*, 408 U.S. 482, 488–89 (1972). But the mere grant of parole by a state parole board does not vest a prisoner with a protected liberty interest. *Jago*, 454 U.S at 21; *Josey v. Pa. Bd. Of Probation & Parole*, Civil Action No. 1:13-CV-0043, 2014 WL 310448, at *5 (M.D. Pa. Jan. 28, 2014) (collecting cases). Under Pennsylvania law, a prisoner does not attain the status of "parolee" until the grant of parole is executed and the prisoner is actually released on parole. *Stephens*, 173 Fed. App'x at 965; *Josey*, 2014 WL 310448, at *5. Until that time, an unexecuted grant of parole may be rescinded by parole officials without implicating procedural due process. *Stephens*, 173 Fed. App'x at 966; *Josey*, 2014 WL 310448, at *5. Absent a protected liberty interest, the

complaint fails to state a cognizable procedural due process claim.

Likewise, it is well established that the mere failure to allow a prisoner to be released on parole before his maximum sentence expires does not state an Eighth Amendment claim. *See Josey*, 2014 WL 310448, at *5 (collecting cases); *Corliss v. Pa. Bd. of Probation & Parole*, No. 4:CV-05-1817, 2006 WL 2927270, at *5 (M.D. Pa. Oct. 11, 2006) ("[I]nmates have no right to be released before the expiration of a valid prison sentence, and serving some or all of a valid prison sentence in prison does not constitute cruel and unusual punishment.").

Accordingly, the plaintiff's § 1983 claims that rescission or decertification of his original anticipated parole release date violated his Fourteenth Amendment procedural due process rights or his Eighth Amendment right to be free from cruel and unusual punishment will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### B. Strip Search

The plaintiff claims that the strip search conducted upon his entry into SCI Camp Hill on December 15, 2020, violated his Eighth Amendment right to be free from cruel and unusual punishment. But the

mere conduct of a strip search on a convicted state prisoner, without any allegation of excessive force or other abuse, does not rise to the level of cruel and unusual punishment. *See Payton v. Vaughn*, 798 F. Supp. 258, 261–62 (E.D. Pa. 1992) ("Embarrassment alone because of casual observance by others does not offend the constitution."); *Jackson v. Werner*, 394 F. Supp. 805, 806 (W.D. Pa. 1975). Here, the plaintiff has alleged no injury beyond embarrassment as a result of the strip search.

Accordingly, the plaintiff's § 1983 claim that the strip search conducted on December 15, 2020, violated his Eighth Amendment right to be free from cruel and unusual punishment will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### C. Retaliation

The plaintiff asserts a § 1983 First Amendment retaliation claim. "[T]o plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463

F.3d 285, 296 (3d Cir. 2006). Courts must diligently enforce these requirements lest public officials be deterred from legitimate decisions for fear of litigation. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). This diligent enforcement does not create a heightened pleading standard, but merely recognizes that courts "should approach prisoner claims of retaliation with skepticism and particular care due to the near inevitability that prisoners will take exception with the decisions of prison officials and the ease with which claims of retaliation may be fabricated." *Alexander v. Forr*, Civil Action No. 3:CV-04-0370, 2006 WL 2796412, at *22 (M.D. Pa. Sept. 27, 2006) (internal quotation marks omitted), *aff'd per curiam*, 297 Fed App'x 102 (3d Cir. 2008).

Here, the plaintiff identifies his submission of a PREA complaint alleging sexual harassment during the strip search as the relevant constitutionally protected conduct. He identifies the decertification of his original anticipated parole date as the relevant retaliatory action. He does not, however, allege any causal link between the two. Indeed, the factual allegations of the complaint make it clear that the allegedly retaliatory action—decertification or rescission of his parole release date

on or about December 25, 2020—occurred several months *before* the alleged constitutionally protected conduct—his submission of the grievance that would trigger a PREA investigation on March 15, 2021. Under these circumstances, it was clearly impossible for the plaintiff's March 2021 PREA complaint to have *caused* the rescission or decertification of his original parole date, which occurred three months earlier, in December 2020.

Accordingly, the plaintiff's § 1983 First Amendment retaliation claim will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### D. Disability Discrimination Claims

The plaintiff asserts disability discrimination claims under Title II of the ADA and under Section 504 of the Rehabilitation Act. *See generally Whitebread v. Luzerne Cnty.*, Civil Action No. 3:22-cv-00133, 2023 WL 349939, at *2 (M.D. Pa. Jan. 20, 2023) (summarizing both causes of action).

Here, the plaintiff alleges that he is disabled based on two medical conditions: (1) "COVID disability" and (2) "military disability," which we

take to mean that Brown is a disabled veteran. "Whether COVID-19 is an actual disability under the ADA [or Section 504] requires a 'case-by-case determination.'" *Whitebread*, 2023 WL 349939, at *4. But the complaint is devoid of any factual allegations to suggest that the nature, severity, and duration of his COVID symptoms rose to the level where it substantially limited one or more major life activities. *See id.* Meanwhile, the plaintiff's conclusory allegation that he is a disabled veteran, without more, is simply insufficient to establish an impairment that substantially limits any of his major life activities. *See Howell v. Sam's Club # 8160/Wal-Mart*, 959 F. Supp. 260, 267–68 (E.D. Pa. 1997) ("The fact that an individual has a record of being a disabled veteran, or of a disability retirement, or is classified as disabled for other purpose does not guarantee that the individual will satisfy the definition of 'disability' under [the ADA]."), *aff'd mem.*, 141 F.3d 1153 (3d. Cir. 1998) (table decision).

Moreover, the complaint has failed to allege any facts whatsoever to suggest that Brown's original anticipated parole date was rescinded or decertified "by reason of his disability," whatever that disability might be.

Accordingly, the plaintiff's ADA and Section 504 disability discrimination claims will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### E. Leave to Amend

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Based on the facts alleged in the complaint, this action will be dismissed *without* leave to amend, as it is clear that any amendment would be futile.

### III. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss will be granted and the action will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

An appropriate order follows.

Dated: September 25, 2023           *s/Joseph F. Saporito, Jr.*
                                    JOSEPH F. SAPORITO, JR.
                                    United States Magistrate Judge