# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Berlin Vanardo Brown
*Plaintiff,*
V.
*CCPM G. Clemens, Parole Agent Patla, Correctional Officer Bennings, Counselor Rhoades, Superintendent L.Harry, Superintendent Ransom, Grievance Coordinator Tonya Heist, Keri Moore, Chief Grievance Coordinator, Parole Agent Schealey Layton, Parole Supervisor Bittner, Board Secretary Deborah Carpenter, Secretary John Wetzel Defendants.*

*Civil Action No. 3:22:CV-1067- Magistrate Judge Saporito*

**Plaintiff's Brief in Support of Motion to Alter of Amend**

I. **Introduction**

Plaintiff Berlin Brown through his attorney Angus Love filed a Motion to Alter or Amend the final judgment issued by Magistrate Saporito on Sept. 25, 2023 in the above captioned matter. Plaintiff Brown contends that the memorandum fails to recognize that the Pennsylvania Department of Corrections [Pa DOC] overrode and rescinded the decision of the Pennsylvania Board of Probation [PBPP] to grant parole without any process or evidence to support their decision. As a result, Brown served an additional 14 months in prison for no reason. This brief accompanies the Motion and sets forth the reasons for the motion.

II. **Magistrate Saporito's Decision Fails to Consider Usurpation by the Pa DOC of the PBPP decision to grant parole.**

    A. **Legal Standard-** A federal court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b) (6). To state a claim for relief, a complaint must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555)). "A pleading that offers 'labels and conclusions' formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly,* 550 U.S. at 555). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler* v.*UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

In deciding whether to dismiss a case for failure to state a claim upon which relief can be granted, a federal court "must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party." *Krieger v. Bank of America*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. County of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. In practice, this leads to a three-part standard: To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must: "First, take note of the elements a plaintiff must plead to state a claim. Second, identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (internal quotation entitlement with its facts." *Fowler* v.*UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

**B. Due Process**- Plaintiff Brown was granted parole by the Pa. Board of Probation and Parole [PBPP] on July 20, 2019 effective as of Nov. 26, 2019 but was Rescinded by Pa DOC officials after the release date on bogus grounds with no opportunity to rebut the incorrect decision, thereby denying due process and establishing cruel and unusual punishment.

Plaintiff Brown was serving a 2-4 year sentence for drug offense at the State Correctional Institute at Dallas Pa. (Brown Complaint- Paragraph 17). As he was approaching his minimum date for parole eligibility, he applied for such in 2019. On July 20, 2019 the Board issued a Green Sheet [Exhibit A] granted him parole as of Nov. 26, 2019. (Com. #. 18). Brown received a misconduct on July 25, 2019 for being in an unauthorized area. (Com. # 19). At the subsequent hearing, the infraction was reduced to a Class 2 offense and was found guilty and sentenced to 2 weeks commissary restriction. (Com. # 20). Brown was told that the guilty finding would not affect his eligibility for the Recidivism Risk Reduction Program [RRRI], an early release program that gives time credits for good behavior. (Com. # 20) The eligibility regulations for RRRI state that one Class 2 infraction does not effect parole eligibility. (Exhibit B-RRRI Regulations)

"Recidivism Risk Reduction Incentive (RRRI) (7.3.1 - Reentry and Transition Procedures Manual Glossary of Terms), Reentry and Transition 7.3.1- Pa DOC website.
 "A type of sentence for eligible inmates in which the court imposes a regular minimum and maximum sentence and an RRRI minimum sentence. Eligible inmates will have the opportunity to serve ¾ of the minimum sentence for sentences up to three years, and 5/6 of the minimum sentence for sentences greater than three years by completing recommended programs and maintaining positive adjustment."

"11.2.1-Reception and Classification Procedures Manuel,
 Section 9-Recidivism Risk Reduction Incentive,
  B. Certification,
   9. Procedures for determining eligibility for Positive Adjustment are outlined below.
       a. The eligible inmate must meet the following guidelines definition of Positive Adjustment while incarcerated in a

Department facility during the previous 12 months to be considered for Certified Status:
    (1) No more than two misconducts of any class;
    (2) No more than one class 1 misconduct; "

[Exhibit B attached]


    Brown was interviewed by Defendant Patia in September 2019 at which time he gave her his home plan and took a urine sample, both of which were approved ( Com. # 21). On Nov. 22, Brown tested positive for COVID and sent to the gym for quarantine. ( Com. # 22). The same day Defendant Patia came to the gym and asked if he had a ride home because the Greyhound bus would not take anyone with COVID. (Com. # 24). Brown said that he didn't have a ride home and would take the Greyhound Bus after he finished the 14 day quarantine. (Com. #26). On Dec. 14 Defendant Patia told Brown that his release date of Nov. 26th would be honored by the Pennsylvania Department of Corrections (Pa. DOC) [Com. #28]. At this stage of the litigation, these comments by Defendant Patia should have been accepted as true, establishing the grant of parole. The following day all inmates in the gym were transferred to SCI Camp Hill as part of the Pa. DOC Covid Response Plan. (Com. #29)

    When he realized that his release date was not honored at Camp Hill, he filed a grievance No. 906672 on Dec. 27th stating that he had passed his urine test, his home plan was approved, and he had completed necessary programing and should have been released as the PPPB ordered.  (Com. #34). Defendant Rhodes came to his cell in response to the grievance and told him he was decertified for release because he got a misconduct and hadn't completed programing which was not true as the green sheet he received granting parole said he had completed programming. Exhibit A-(Com. #35). A formal response to the grievance was received on Dec. 29th citing the same reasons which were untrue. [See Exhibit A and B] (Com. #36). Brown appealed to the second and third levels of the grievance process to no avail (Com. #37 and 38) Brown

>also wrote to Secretary Wetzel but was informed that grievance decision stands. (Com. #39).

The United States Supreme Court held that a parolee enjoys a "conditional liberty" protected by due process in *Morrissey v. Brewer*, 408 U.S. at 485–89. Parole rescission requires only "some evidence" supporting rescission, *McQuillion v. Duncan* 306 F. 3d 895,904-05 (9th Cir. 2002)

This Court's opinion page 6 states:

"Under Pennsylvania law, a prisoner does not attain the status of "parolee" until the grant of parole is executed and the prisoner is actually released on parole. *Stephens*, 173 Fed. App'x at 965; Josey, 2014 WL 310448, at *5. Until that time, an unexecuted grant of parole may be rescinded by <u>parole officials</u> without implicating procedural due process. *Stephens*, 173 Fed. App'x at 966; Josey, 2014 WL 310448, at *5." [Case 3:22-cv-01067-JFS Document 18 Filed 09/25/23 Page 6 of 13], emphasis added

In this instance Pa. DOC official's rescinded Brown grant of parole not officials from the PBPP as the Court opinion suggests, see *Stephens* supra. Additionally the prison official's decision to rescind was based in incorrect information that the Plaintiff had no opportunity to rebut or challenge. Brown filed grievance No. 906672 protesting the recession on Dec. 27, 2023 (Com. #34). The response to his grievance on Dec. 29th said that he had not completed programming however the grant of parole on July 20, 2019, commonly called a 'Green Sheet' indicated that Brown had completed the programming necessary for early release. Reasons for approval-"Your participation in and completion of prescribed institutional programs"  (Com. #36) {Exhibit A} The Grievance response also cited a misconduct he received on July 25, 2019 as another reason for the rescission. The misconduct of July 25th was class 2 infraction.(Com. #19-20) Prison officials told Brown at the hearing that the misconduct decision would not affect his eligibility for RRRI an early release program.(Com. 20). Furthermore the regulations of the RRRI program state that a class 2 misconduct will not affect eligibility for RRRI credits towards release. One must get two such misconducts or one major [class 1] misconduct to be declared ineligible. [Exhibit B]. All of this was done after the fact. Parole granted as of Nov. 26th. He was transferred on Dec. 15th to Camp Hill as part of the Pa. DOC COVID response program and informed of rescission

Dec. 27th.(Com.#29)  The release was delayed due to Brown contracting COVID, the Greyhound Bus's refusal to take persons with COVID and his own inability to get a ride home. (Com, #24 and 26).
　　　　Defense counsel Francis (Frank) Harrison Pryzbylkowski acknowledged the lack of PBPP involvement in his e mail of Mar. 9, 2023 refusing to allow the deposition of Defendant Patia:

"Neither Patla or Harry have personal involvement in your client's claims. I will not allow them to be subjected to a deposition or interrogatories until the Court resolves that Motion to Dismiss and if/when I file an answer in this matter. If you do not voluntarily withdraw your new round of discovery requests I will file a Motion to Stay Discovery with the Court." E mail of March 9, 2023 to Angus Love in response of the request to take Defendant Patia deposition. Love refused to withdraw his request. Pryzbylkowski did file a Motion to Stay shortly thereafter which the Court ruled moot, 6 months later it its ruling of Sept. 25th 2023.

　　　　The Due Process Clauses prohibit governments, including prison officials, from depriving you of "life, liberty, or property without due process of law." This Court's decision of Sept. 25th states that there is no liberty interest in granting parole until actual release occurs which Brown concedes did not occur. However the Pa DOC unilateral decision rescinding Brown's release without cause and provided no process or opportunity to rebut raises several constitutional concerns.
　　　　 Parole rescission means having your parole release date taken from you before you are actually released on parole. Like parole release, and unlike parole revocation, parole rescission does not entitle you to due process protections unless the state has created a liberty interest in parole release.  Parole rescission requires only "some evidence" supporting rescission. Caswell v. Calderon, 363 F.3d 832, 838–39 (9th Cir. 2004); McQuillion v. Duncan, 306 F.3d 895, 904–05 (9th Cir. 3015 2002); McCarns v. Dexter, 534 F. Supp. 2d 1138, 1149–56 (C.D.Cal. 2008) (finding Governor's rescission of parole date denied due process). There was no evidence to support the recession.
　　　　　Even without a state created liberty interest, actions that make prisoners ineligible for parole have been held to deprive them of a liberty interest. *Sandin v. Connor* 515 U.S. 472 (1995) that some prison conditions "exceed [] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." That is, they are

"so severe in kind or degree (or so removed from the original terms of confinement) that they amount to deprivations of liberty," regardless of the terms of state law. For these reasons, *Sandin v. Connor said* that prisoners should only be found to have liberty interests in three circumstances: (1) when the right at issue is independently protected by the Constitution, (2) when the challenged action causes the prisoner to spend more time in prison, or (3) when the action imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Clearly, Pa DOC official's decision is atypical of prison life and the decision to rescind parole forced Brown to serve an additional 14 months in confinement. Freedom from restraint which … nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

### C. Cruel and Unusual Punishment

The Eighth Amendment, which forbids "cruel and unusual Punishments, U.S.Const., Amend. VIII, governs the treatment of convicted prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321 (1991). *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392 (1981). To win an Eighth Amendment case, you must establish both an "objective component," the seriousness of the challenged conditions, and a "subjective component," the state of mind of the officials who are responsible for them, Rhodes supra. Clearly the actions of Pa DOC officials denying Brown release is sufficiently serious and the state of mind, or lack thereof should violate the 8th Amendment prohibitions. The decision to rescind parole by Defendants Rhodes, Harry, Heist and others was without penological justification and added 14 months to Brown's sentence for no reason constituting cruel and unusual punishment.

### III.    .Retaliation Claim- Grant of 12 B 6 Motion was premature

The Court ruled that Brown's grievance concerning the strip search he was subject to upon entry to Camp Hill was three months after his parole date was rescinded. The Court then concluded that it couldn't have been retaliatory. Brown maintains that he complained about the strip search immediately after it happened to Defendants Unit Manager Hounga and Counselor Rhodes. (Com. #33) Rhodes is the person who first told Brown of the parole recession. (Com. #35). Brown alleges that Defendant Clemens, who is the PREA Coordinator, knew that Brown complained

about the strip search given upon entry to Camp Hill and that he assisted in rescinded his parole in retaliation for complaining. As pleading must be accepted as true for purposes of a 12 B 6 motion and read in the light most favorable to the Plaintiff, such speech would be protected. PREA protocols would reveal the fact that even a verbal complaint would need to be documented and that the PREA investigators (Clements) would have been aware of them. If discovery had been allowed to proceed, the PREA investigation could reveal the presence of verbal complaints as required by PREA protocols as well as Clemens knowledge of such and his role in the recession. As such the dismissal was premature.

### IV.   Americans with Disabilities Claim [ADA]

Brown also argues the inability to conduct discovery preventing him from establishing an ADA claim. The court ruled that Brown failed to show a life threatening condition triggering an ADA claim. The Defendants refused to produce their COVID Response Plan. They also objected to the production of his medical records contained in the Brown's DC-14 and15 personnel files, usually a starting point in discover in such cases. [Plaintiff Brown's First Set of Documents Requests]. They then filed a Motion to Stay Discovery on March 14, 2023, and refused to cooperate further on discovery issues. The Court failed to rule on the Motion to Stay Discovery until its final decision rendering it moot. The records would have revealed the extent of his illness. As such, the Court's decision was premature.

### V.   **Conclusion**

The decision to rescind Brown's parole by Counselor Rhodes, Grievance Coordinator Heist, Superintendent Harry and others was without penological justification and should not be allowed to stand. The recession violated Brown's rights under the Due Process Clause and the Eighth Amendment prohibition against cruel and unusual punishment. Plaintiff Brown served an additional 14 months because of these violations of his rights. As the Court is required to accept the pleading as true for purposes of a 12 B 6 Motion and to read them in the light most favorable to him, Plaintiff

Brown requests this Honorable Court to Alter or Amend its decision of Sept. 25th for the above referenced reasons, allow discover to proceed including depositions of key defendants so that a full record can be established.

                                 **Respectfully submitted,**

                                 **/s/ Angus R. Love**

                                 **Angus R. Love**
                                 **Attorney ID No. 22392**
                                 **Law Offices of Angus Love**
                                 **P.O. Box 521**
                                 **Narberth, Pa. 19072**

                                 *Attorney for Plaintiff*

**DATE:** Oct. 3, 2023