# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

BERLIN VANARDO BROWN,

        Plaintiff,

        v.

CCPM G. CLEMENS, et al.,

        Defendants.

CIVIL ACTION NO. 3:22-cv-01067

(SAPORITO, J.)

## MEMORANDUM

Appearing through counsel, the plaintiff, Berlin Vanardo Brown, commenced this federal civil rights action by filing his original, fee-paid complaint on July 7, 2022. Doc. 1. In that original complaint, Brown named a long list of state correctional and parole officials as defendants, seeking an award of damages for a series of events that caused him to be incarcerated beyond his original anticipated parole date, although he was released from custody before the expiration of his maximum sentence.

Brown's original complaint asserted the following claims: (a) a § 1983 Fourteenth Amendment due process claim based on the decertification of his original parole release date, which resulted in his incarceration for an additional period of 14 months after that date; (b) a § 1983 Eighth Amendment claim based on the decertification of his

original parole release date, causing him to serve an additional 14 months in prison, which he contended was cruel and unusual punishment; (c) a § 1983 Eighth Amendment claim based upon a strip search conducted by prison officials on December 15, 2020; (d) a § 1983 First Amendment retaliation claim in which he contended that his parole release date was decertified in retaliation for his filing of a PREA complaint about that strip search; and (e) a disability discrimination claim under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, in which he contended that his parole release date was decertified due to "Covid disability" and "military disability." For relief, the plaintiff sought an award of compensatory and punitive damages.

On September 25, 2023, we granted the defendants' motion to dismiss the original complaint. All of the claims asserted in the plaintiff's original complaint were dismissed for failure to state a claim upon which relief could be granted, pursuant to Fed. R. Civ. P. 12(b)(6). Further finding that any amendment would be futile, we dismissed the plaintiff's

claims without leave to amend. Doc. 18; Doc. 19.[1]

The plaintiff filed a timely Rule 59(e) motion for reconsideration, which we denied on December 13, 2023. Doc. 24.[2]

The plaintiff then appealed the dismissal of his original complaint. On appeal, the plaintiff limited his arguments to his decertification claims—his § 1983 Fourteenth Amendment due process claim concerning parole decertification, his § 1983 Eighth Amendment cruel and unusual punishment claim concerning parole decertification, and his ADA and RA claims concerning parole decertification. *See Brown v. Clemens*, No. 23-3213, 2024 WL 4601681, at *1 (3d Cir. Oct. 29, 2024) ("Brown only appeals the claims concerning the decertification decision.").[3] With respect to our dismissal of Brown's § 1983 claims based on parole

---

[1] *See also Brown v. Clemens*, No. 3:22-cv-01067, 2023 WL 6216717 (M.D. Pa. Sept. 25, 2023), *aff'd in part, rev'd in part*, No. 23-3213, 2024 WL 4601681 (3d Cir. Oct. 29, 2024).

[2] *See also Brown v. Clemens*, No. 3:22-cv-01067, 2023 WL 9016391 (M.D. Pa. Dec. 13, 2023).

[3] In doing so, Brown waived his § 1983 Eighth Amendment claim based on the December 2020 strip search and his § 1983 First Amendment retaliation claim. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993); *see also United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.") (citing *Kost*, 1 F.3d at 182).

decertification, arising under the Fourteenth Amendment and the Eighth Amendment, the Third Circuit affirmed our decision to dismiss these claims with prejudice. *See id.* at *2. With respect to our dismissal of Brown's disability discrimination claims based on parole decertification, arising under the ADA and the RA, the Third Circuit agreed with our dismissal of these claims as pleaded in the original complaint, but found that dismissal *without* leave to amend on the basis that amendment would be futile was error. *See id.* ("Although Brown's initial complaint failed to state claims cognizable under the ADA and RA, it is possible that Brown could replead the specifics of his alleged disabilities to demonstrate a plausible claim. As a result, Brown should have been afforded the opportunity to amend his claims under the ADA and RA to cure the pleading deficiencies noted by the District Court.") (footnote omitted). The Third Circuit affirmed our ruling on the Fourteenth and Eighth Amendment claims, vacated our ruling with respect to the ADA and RA claims, and remanded the case with instructions to dismiss the ADA and RA claims *with* leave to amend. *See id.* at *3.

Upon receipt of the mandate, we entered an order dismissing the plaintiff's ADA and RA claims for failure to state a claim, but with leave

to file an amended complaint limited to claims of disability discrimination under Title II of the ADA and Section 504 of the RA. Doc. 37.

On December 18, 2024, the plaintiff filed his amended complaint. Doc. 38. The amended complaint names the very same long list of state correctional and parole officials as defendants as had been named in the original complaint.[4] It alleges additional details regarding the nature of the plaintiff's prior military service and service-connected disability, the nature and duration of the plaintiff's COVID symptoms, the policies and process involved in the state parole board's decision to grant him early parole, the inmate misconduct proceedings against him that later formed the purported basis of parole decertification, the policies and process

---

[4] The named defendants are: (1) G. Clemens, PREA coordinator at SCI Camp Hill; (2) Parole Agent Patia, a parole agent assigned to SCI Dallas; (3) Correctional Officer Bennings, a correctional officer at SCI Camp Hill; (4) Counselor Rhoades, a corrections counselor at SCI Camp Hill; (5) Superintendent L. Harry, superintendent of SCI Camp Hill; (6) Superintendent Ransom, superintendent of SCI Dallas; (7) Tonya Heist, grievance coordinator at SCI Camp Hill; (8) Keri Moore, chief grievance officer for the state department of corrections; (9) Schealey Layton, a state parole agent; (10) Parole Supervisor Bittner; (11) Deborah Carpenter, secretary of the state parole board; and (12) John Wetzel, secretary of corrections. All are sued in both their personal and official capacities.

involved in decertification of his parole, and inmate grievance proceedings in which the plaintiff complained about the parole decertification and about the December 2020 strip search. The amended complaint asserts the following claims: (a) in Count One, a disability discrimination claim under Title II of the ADA and Section 504 the RA, in which the plaintiff contends that decertification of parole because of his COVID infection constituted a failure to provide reasonable accommodation with respect to his COVID-related disability; (b) in Count Two, a disability discrimination claim under Title II of the ADA and Section 504 of the RA, in which he contends that the conduct of the December 2020 strip search in a common area without utilizing available privacy booths constituted a failure to provide reasonable accommodation with respect to his military service-connected disability of PTSD involving sexual trauma; (c) in Count Three, a § 1983 First Amendment retaliation claim in which he contends that his parole release date was decertified in retaliation for his complaints about the parole decertification, which further constitutes a denial of his First Amendment right of access to courts; and (d) in Count Four a § 1983 First Amendment retaliation claim in which he contends that his parole

release date was decertified in retaliation for his complaints about the December 2020 strip search, which further constitutes a denial of his First Amendment right of access to courts. For relief, the plaintiff seeks an award of compensatory and punitive damages.

The defendants have filed a Rule 12(b)(6) motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Doc. 39. The motion is fully briefed and ripe for decision. Doc. 40; Doc. 41.

## I.    FACTUAL ALLEGATIONS

According to the amended complaint, Brown was incarcerated at SCI Dallas, a state prison located in Luzerne County, Pennsylvania, in 2020. He is a United States Navy veteran whose service included time aboard a ship during the Persian Gulf War. He was honorably discharged in 1994 with a 70% disability for post-traumatic stress disorder involving sexual trauma. In October 2022, after this lawsuit was filed, his military disability rating was increased to 100%.

In 2017, Brown was convicted of possession of a controlled substance and sentenced to serve 4½ to 9 years in state prison. He was incarcerated at SCI Dallas, located in Luzerne County, Pennsylvania.

On July 20, 2020, Brown was granted early parole under a recidivism risk reduction program, with an anticipated release date of November 26, 2020.

On November 21, 2020, a few days before his anticipated parole release date, Brown began to feel ill. On November 22, 2020, Brown tested positive for COVID and was transferred to the gymnasium at SCI Dallas to quarantine with about 100 other inmates who had also tested positive for COVID. Brown subsequently developed symptoms of COVID as well, including a fever, congestion, loss of sense of smell and taste, night sweats, diarrhea, and chills.

On November 23 or 24, 2020, while quarantined in the gymnasium, a parole agent, defendant Patia, asked if he had a ride home for his anticipated release on November 26, 2020. Brown told her that he didn't have a ride, but instead would take a Greyhound bus home to York, Pennsylvania. Patia told him that Greyhound would not transport anyone who had tested positive for COVID.

On November 25, 2020, Patia returned to the gymnasium to ask Brown what he was going to do. Brown told Patia that he couldn't get a ride home, but chose instead to wait until his 14-day quarantine period

expired and then take the bus home.[5]

After two weeks in quarantine, Brown tested negative for COVID and was returned to his cell. But many of his symptoms continued, including respiratory congestion, shortness of breath, loss of taste and smell, and difficulty breathing.[6] Shortly thereafter, he was informed by an unidentified correctional officer that, as part of a statewide departmental COVID response plan, he and all other inmates who had tested positive for COVID would be transferred to a single institution, SCI Camp Hill in Cumberland County, Pennsylvania.

On December 14, 2020, Patia told Brown that SCI Camp Hill would honor his parole release date.

On December 15, 2020, Brown was transferred to SCI Camp Hill.

---

[5] The facts recited in this paragraph were alleged in the original complaint, but omitted from the amended complaint. Although the original complaint has been superseded by a subsequent pleading and rendered of no legal effect, we may take judicial notice of factual admissions in the superseded pleading, which is part of the public record. *See Pa. R.R. Co. v. City of Girard*, 210 F.2d 437, 440 (6th Cir. 1954) ("[P]leadings withdrawn or superseded by amended pleadings are admissions against the pleader in the action in which they were filed."); *see also Rowbottom v. City of Harrisburg*, No. 19-cv-00657, 2020 WL 6866262, at *1 n.1 (M.D. Pa. Jan. 23, 2020) (taking judicial notice of factual admissions in superseded pleadings).

[6] Brown alleges that these symptoms continued even after his arrival at Camp Hill.

Upon arrival, he was subjected to a strip search, along with seven other inmates. Despite Brown's complaints, the correctional officer conducting the search, defendant Bennings, declined to permit the inmates to use nearby "privacy booths" with curtains and dividers.[7] Brown initially refused to get naked in front of the other seven inmates, but relented when Bennings threatened disciplinary action and possible solitary confinement for any inmates who refused to cooperate. Brown alleges that the strip search triggered his PTSD, causing anxiety, homicidal thoughts, and depression. Brown further alleges that he suffered numerous panic attacks in the following week, and his panic attacks continued throughout the remainder of his period of incarceration.

On December 22, 2020, Brown's parole release date was "decertified" by a parole agent, defendant Layton, without notice or a hearing. The initial basis given for decertification was Brown's receipt of two class 2 misconduct citations.[8] Brown previously had been found

---

[7] The strip search is alleged to have taken place in a "common area." Although omitted from the allegations of the amended complaint, the original complaint acknowledged that the strip search was, in fact, conducted behind a curtain, although it appears that the eight inmates were exposed to one another during the strip search. *See supra* note 5.

[8] Brown alleges that his decertification for receiving two class 2

*(continued on next page)*

guilty of a class 2 misconduct offense on two separate occasions, in October 2019 and July 2020.[9] On December 27, 2020, Brown filed a grievance about this decertification of his anticipated parole release date. In response, the grievance was denied and Brown was informed that his parole release date had been decertified due to his July 2020 misconduct and because he had not completed the "T.C. Violence" program.[10] Brown appealed that grievance denial to the facility and statewide levels, where the response was upheld. He alleges that decertification of his parole release date exacerbated his PTSD.

About two months after arriving at SCI Camp Hill, Brown once again tested positive for COVID, and he once again quarantined in a

---

misconducts was at odds with the departmental regulations governing the recidivism risk reduction program. Those regulations provided that an eligible inmate could be certified for early parole release so long as he received no more than one class 1 misconduct or two misconducts of any class within the preceding twelve months.

[9] On one occasion, the amended complaint contains a scrivener's error, referring to the July 2020 misconduct as having occurred in 2019. Elsewhere, the amended complaint refers to it having occurred in 2020, and the original complaint contained multiple references to it as having occurred in July 2020. *See supra* note 5.

[10] Brown alleges that this finding was contradicted by a "green sheet" provided to him when initially certified for early parole release in July 2020. The green sheet cited "participation in and completion of institutional programs" as one criterion in support of certification.

prison gym for a two week period. After his quarantine period, Brown tested negative for COVID, but his symptoms lingered.

On March 15, 2021, Brown filed a grievance about the strip search that had occurred on December 15, 2020. On March 21, 2020, the facility grievance coordinator rejected the grievance as incorrectly filed, and she forwarded it to the prison's PREA (Prison Rape Elimination Act) coordinator for investigation. Brown appealed this grievance to the facility and statewide levels for review as well, where the response was upheld.

On May 18, 2021, the PREA investigation resulted in a determination that his complaint about the strip search was unsubstantiated.

On April 26, 2021, Brown again filed a grievance about decertification of his parole release date, but the grievance was rejected as untimely. Brown appealed to the facility and statewide levels for review, but the rejection of this grievance was upheld.

On June 10, 2021, Brown filed a grievance alleging that his parole release date was decertified in retaliation for his complaint about the strip search, but the grievance was rejected as untimely. Brown appealed

to the facility and statewide levels for review, but the rejection of this grievance was upheld.

On January 12, 2022, Brown was released on parole, 14 months after his original anticipated parole release date.[11]

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the

---

[11] Both the original complaint and the amended complaint contain an obvious scrivener's error, alleging that Brown was released on parole on January 12, 2021. Based on the other facts alleged, including events occurring within prison after January 12, 2021, as well as the representations of counsel in both sides' motion papers, it is clear that Brown was actually released on parole on January 12, 2022.

complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III.  DISCUSSION

The defendants have moved to dismiss the amended complaint in its entirety. The defendants contend that Counts Two, Three, and Four should be dismissed because these claims are merely retitled versions of claims asserted in the original complaint, which were previously dismissed with prejudice and either affirmed or waived on appeal, and

because they exceed the limited scope of leave to amend granted by this court at the instruction of the court of appeals. The defendants contend that Count One should be dismissed because the amended complaint fails to allege sufficient facts to state a plausible disability discrimination claim under the ADA or the RA.

### A. Counts Two, Three, and Four

On appeal, the plaintiff limited his arguments to his claims concerning parole decertification under the Fourteenth Amendment, the Eighth Amendment, and the ADA and RA. He did not challenge our dismissal of his Eighth Amendment strip search claim or his First Amendment retaliation claim. The Third Circuit affirmed our dismissal with prejudice of the plaintiff's Fourteenth Amendment and Eighth Amendment parole decertification claims. It agreed with our determination that the original complaint failed to state cognizable ADA and RA parole decertification claims, but disagreed with our finding that any amendment would be futile, remanding these claims with instructions to dismiss them with leave to amend.

On remand, we entered an order dismissing the plaintiff's ADA and RA parole decertification claims with leave to file an amended complaint.

But that leave to amend was expressly limited to repleading the plaintiff's claims of disability discrimination under the ADA and the RA. The plaintiff timely filed his amended complaint, but Counts Two, Three, and Four essentially replead the plaintiff's previously dismissed strip search and retaliation claims, which were abandoned by the plaintiff on appeal.

In Counts Three and Four, the plaintiff has asserted § 1983 First Amendment retaliation claims based on Brown's complaints and grievances about the parole decertification decision and about the December 2020 strip search. The amended complaint also asserts, without any further articulation, that this retaliatory conduct constitutes a denial of Brown's First Amendment right of access to the courts as well.[12] Neither Count Three nor Four asserts a disability discrimination claim under the ADA or the RA. Thus, Counts Three and Four exceed the expressly limited scope of leave to amend granted by this court and may

---

[12] Notably, the amended complaint does not allege any actual injury—i.e., that Brown lost a chance to pursue a nonfrivolous or arguable underlying claim—nor that Brown had no other remedy for the lost claim other than the present action, both essential elements of a § 1983 access-to-courts claim. *See generally Monroe v. Beard*, 536 F.3d 198, 205–06 (3d Cir. 2008).

be dismissed as unauthorized amendments. *See Campbell v. United States*, 375 Fed. App'x 254, 260 (3d Cir. 2010) (finding the district court had discretion to dismiss an amended complaint that exceed that permissible scope of amendment); *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 524 (3d Cir. 2007) ("The rejection of an unapproved amended complaint is not an abuse of discretion."); *Elansari v. United States*, No. 3:15-CV-01461, 2017 WL 7053976, at *10 (M.D. Pa. Nov. 30, 2017) (citing *Campbell* and *Atkinson*); *Castillo v. Does*, No. 3:15-CV-00910, 2017 WL 6508716, at *5 (M.D. Pa. Oct. 30, 2017) (same); *see also MacIntyre v. Moore*, 335 F. Supp. 3d 402, 410 (W.D.N.Y. 2018) ("Since this claim exceeds the limited scope of Plaintiffs' leave to amend, the Court would be justified in dismissing the claim on this ground."); *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1125 (C.D. Cal. 2015) (striking unauthorized claims where court had previously granted only limited leave to amend); *Kuntz v. N.Y. State Bd. of Elections*, 924 F. Supp. 364, 367–68 (N.D.N.Y. 1996) (dismissing unauthorized claims where court had previously granted only limited leave to amend).

Although Count Two might arguably fall within the scope of leave to amend as articulated in our order because it asserts disability

discrimination claims under the ADA and RA, it is nonetheless barred by the law of the case doctrine. In his prior appeal to the Third Circuit, the plaintiff limited his arguments to his claims concerning parole decertification, abandoning any claims concerning the strip search. *See Brown*, 2024 WL 4601681, at *1 ("Brown only appeals the claims concerning the decertification decision."); *see also supra* note 3.

It is well established that, if an issue was not previously raised in an appellant's brief, it is deemed to be waived on appeal, and thus, an alternative theory of recovery that was not before an appellate court cannot be remanded to the lower court. *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 88 (3d Cir. 1987) ("An issue that is not addressed in an appellant's brief is deemed waived on appeal. Appellants' alternative theory of recovery was not before this court in the earlier appeal; *a fortiori*, it could not be remanded to the district court.") (citation omitted); *see also Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 203 (3d Cir. 2004) ("We have consistently rejected . . . attempts to litigate on remand issues that were not raised in a party's prior appeal and that were not explicitly or implicitly remanded for further proceedings."); *Cowgill v. Raymark Indus., Inc.*, 832 F.2d 798, 802 n.2 (3d Cir. 1987) ("[A] party

waives a contention that could have been but was not raised on a prior appeal . . . .") (internal quotation marks omitted); *McKenna v. City of Phila.*, 511 F. Supp. 2d 518, 528–29 (E.D. Pa. 2007) ("Under the law of the case doctrine, matters that could have been raised in an appeal are waived upon remand.") (citing *Skretvedt*, 372 F.3d at 203).

In its opinion and mandate, the Third Circuit remanded the plaintiff's ADA and RA disability discrimination claims concerning parole decertification only, with instructions to permit the plaintiff to file an amended complaint to correct the pleading deficiencies we had identified in our prior decision dismissing the original complaint. The plaintiff did so, and the remanded disability discrimination claims are articulated in Count One of the amended complaint. But Count Two, newly asserting an alternative theory of recovery for disability discrimination based on the December 2020 strip search, was waived on appeal, and thus it is waived here on remand as well.[13]

Accordingly, we will dismiss Counts Two, Three, and Four of the

---

[13] This same rationale applies to Counts Three and Four to the extent they assert alternative theories of recovery for his original § 1983 First Amendment retaliation claim, which was waived on appeal as well. *See supra* note 3.

amended complaint as unauthorized amendments and as having been waived on appeal.

## B. Count One

In Count One, the plaintiff has repleaded his ADA and RA disability discrimination claims concerning parole decertification. The defendants have moved to dismiss this repleaded count for failure to state a claim upon which relief can be granted.

As a threshold matter, we first note that the plaintiff's ADA and RA claims are asserted against the several defendants in both their official *and* personal capacities. But there simply is no individual liability for damages under Title II of the ADA or Section 504 of the RA, thus the plaintiff's personal-capacity ADA and RA disability discrimination claims must be dismissed for failure to state a claim. *See Talley v. Clark*, No. 19-3078, 2023 WL 118470, at *1 n.2 (3d Cir. Jan. 6, 2023) (per curiam) ("To the extent that [the plaintiff] brought ADA claims against the individual DOC defendants, we note that there is no liability under that Act for individual employees."); *Kokinda v. Pa. Dep't of Corr.*, 779 Fed. App'x 944, 949 (3d Cir. 2019) (per curiam) ("[C]laims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such

liability."); *Matthews v. Pa. Dep't of Corr.*, 613 Fed. App'x 163, 169–70 (3d Cir. 2015) (affirming dismissal of personal-capacity claims against individual defendants because they were not public entities subject to suit under the ADA or the RA); *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 804 (3d Cir. 2007) ("[S]uits may be brought pursuant to Section 504 [of the RA] against recipients of federal financial assistance, but not against individuals."); *Lewald v. Pa. Dep't of Corr.*, No. 22-cv-04625, 2023 WL 8283173, at *6 (E.D. Pa. Nov. 30, 2023) ("State officials sued in their individual capacities cannot be sued under Title II of the ADA or the RA."); *Graziano v. Pa. Dep't of Corr.*, No. 1:22-CV-00163, 2023 WL 6389756, at *30 (W.D. Pa. Sept. 30, 2023) ("Title II [of the ADA] does not authorize suits against government officers in their individual capacities."). Thus, the plaintiff's ADA and RA disability discrimination claims brought against the several individual defendants in their personal capacities will be dismissed for failure to state a claim.

We further note that the plaintiff's ADA and RA claims seek both compensatory *and* punitive damages. But punitive damages are simply not an available remedy under either Title II of the ADA or Section 504 of the RA. *See Barnes v. Gorman*, 536 U.S. 181, 189–90 (2002) (holding

that punitive damages may not be awarded in suits brought under Title II of the ADA or Section 504 of the RA); *see also Talley*, 2023 WL 118470, at *1 n.2 ("[P]unitive damages are not available under Title II of the ADA."); *A.W.*, 486 F.3d at 804 ("The remedies for violation of Section 504 [of the ADA] . . . include compensatory damages, injunctive relief, and other forms of relief traditionally available in suits for breach of contract. Punitive damages are not available.") (citation omitted). Thus, the plaintiff's ADA and RA disability discrimination claims for punitive damages will be dismissed for failure to state a claim.

What remains, then, are the plaintiff's ADA and RA disability discrimination claims against the several individual defendants in their official capacities. The plaintiff's ADA claims against the individual defendants in their official capacities are tantamount to lodging these claims against the state itself, since it is the real party in interest. *See Palmer v. Watterson*, No. 1:20-cv-10, 2023 WL 5416559, at *4 n.7 (W.D. Pa. Feb. 14, 2023). Similarly, the plaintiff's RA claims against the individual defendants in their official capacities are tantamount to lodging these claims against the state agencies that employ the individual defendants—the Pennsylvania Department of Corrections and

the Pennsylvania Board of Probation and Parole—as it is the agencies who are the public entities that received federal financial assistance, not the individual defendants themselves. *See id.*

Title II of the ADA provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Claims under the ADA and the RA are generally subject to the same substantive standard.[14] *See Matthews*, 613 Fed. App'x at 166–67 ("The

_____

[14] To make out a claim under the RA, a plaintiff must establish the same elements as under the ADA, but he or she must also prove that the program in question received federal funding. *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 n.10 (3d Cir. 2013). Moreover, the causation elements of the ADA and the RA differ in that the "RA allows a plaintiff to recover if he or she were deprived of an opportunity to participate in a program *solely* on the basis of a disability, while the ADA covers discrimination on the basis of disability, even if there is another cause as well." *Id.* at 235–

*(continued on next page)*

ADA and the Rehabilitation Act have the same standard for liability and are to be interpreted consistently.") (citing *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012); *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260 (3d Cir. 2013) ("The same standards govern both the RA and the ADA claims."); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535 n.12 (3d Cir. 2007) ("Although the language of the ADA and Rehabilitation Act differs, the standards for determining liability under the two statutes are identical."). "To state a claim under either the ADA or the RA, [a plaintiff] must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288–89 (3d Cir. 2019); *see also Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023); *Matthews v. Pa. Dep't of Corr.*, 827 Fed. App'x 184, 187 (3d Cir. 2020) (citing *Bowers*, 475 F.3d at 553 n.32).

But the plaintiff faces an additional hurdle under the ADA and the RA. He "must also show intentional discrimination under a deliberate

---

36 (emphasis added). But both statutes require plaintiffs to prove "that they were treated differently based on the protected characteristic, namely the existence of their disability." *Id.* at 236.

indifference standard because he seeks compensatory damages." *Furgess*, 933 F.3d at 289; *see also Durham*, 82 F.4th at 226; *Matthews*, 827 Fed. App'x at 187; *S.H. ex rel. Durrell*, 729 F.3d at 261 ("[C]laims for compensatory damages under § 504 of the RA and § 202 of the ADA also require a finding of intentional discrimination."); *id.* at 263 ("[A] showing of deliberate indifference may satisfy a claim for compensatory damages under § 504 of the RA and § 202 of the ADA."). To plead deliberate indifference, an ADA or RA claimant must allege "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *S.H. ex rel. Durrell*, 729 F.3d at 263 (internal quotation marks omitted); *see also Durham*, 82 F.4th at 226; *Matthews*, 827 Fed. App'x at 187.

In previously analyzing Brown's parole decertification claims under § 1983, we concluded that he had failed to state a claim in the context of the First, Eighth, and Fourteenth Amendments. *See Brown*, 2023 WL 6216717, at *2 ("[I]t is well settled that the United States Constitution does not create a protected liberty interest in a pre-release expectation of parole. . . . Absent a protected liberty interest, the complaint fails to state a cognizable procedural due process claim."); *id.* at *3 ("[M]ere failure to

allow a prisoner to be released on parole before his maximum sentence expires does not state an Eighth Amendment claim."); *id.* at *3–4 (dismissing First Amendment retaliation claim for failure to allege causal link where the allegedly retaliatory parole decertification occurred *before* the alleged constitutionally protected conduct). Those rulings were either affirmed or waived on appeal, and thus constitute law of the case. *See Brown*, 2024 WL 4601681. Based on this, it is clear that the plaintiff cannot rely on the parole decertification decision to satisfy the requirement that he allege "knowledge that a harm to a federally protected right is substantially likely." *See Durham*, 82 F.4th at 226; *Matthews*, 827 Fed. App'x at 187; *S.H. ex rel. Durrell*, 729 F.3d at 263. Thus, he has failed to "show intentional discrimination under a deliberate indifference standard because he seeks compensatory damages." *Furgess*, 933 F.3d at 289.

In his brief, Brown points to no other federally protected right in connection with this remaining claim of disability discrimination. Instead, he argues that he is not required to allege intentional discrimination because his repleaded ADA and RA claims are based on a failure to provide reasonable accommodation for his alleged disabilities

rather than purposeful discrimination.[15] *See generally Muhammad v. Ct. Com. Pl. Allegheny Cnty.*, 483 Fed. App'x 759, 764 (3d Cir. 2012) (per curiam) ("A failure-to-accommodate claim differs from other ADA claims in that the ADA does not require a failure-to-accommodate plaintiff to show that his injury was the result of purposeful discrimination."); *id.* at 763 ("To make out such a claim, a plaintiff must show that the accommodation he seeks is reasonable, i.e., that it is 'necessary to avoid

---

[15] The plaintiff's brief asserts that, "[t]o establish an ADA [or RA] claim[,] a plaintiff need not allege intentional discrimination, rather he must show that 'but for the failure to accommodate, he would not be deprived of the benefit he seeks.'" Pl. Br. Opp'n 3, Doc. 41. In support, the plaintiff cites to a California federal district court decision, *Presta v. Peninsula Corridor Joint Powers Board*, 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998). But that quotation does not come from *Presta*, and the *Presta* decision does not support the plaintiff's statement in any manner. It is not an incorrect statement of law, however: A Westlaw search for the quoted language reveals an unpublished per curiam decision by the Third Circuit that contains the quoted language, *Muhammad v. Court of Common Pleas of Allegheny County*, 483 Fed. App'x 759, 764 (3d Cir. 2012) (per curiam) (noting that, under the ADA, "the plaintiff must demonstrate that, but for the failure to accommodate, he would not be deprived of the benefit he seeks"), and reported decisions by this district court, *Lamberson v. Pennsylvania*, 963 F. Supp. 2d 400, 413 (M.D. Pa. 2013) (quoting *Muhammad*, 483 Fed. App'x at 764), and another district court within this circuit, *Starego v. N.J. State Interscholastic Athletic Ass'n*, 970 F. Supp. 2d 303, 314 (D.N.J. 2013) (same), as well. Notably, however, all three decisions involved requests for *injunctive relief*, a remedy Brown does not seek, presumably because any such request would be moot in light of his release from prison prior to filing this action.

discrimination on the basis of disability.'") (citation omitted).

But binding circuit precedent is clear on the matter: An ADA or RA claim for compensatory damages requires allegations of intentional discrimination under a deliberate indifference standard. *See Furgess*, 933 F.3d at 289; *S.H. ex rel. Durrell*, 729 F.3d at 261–62. The assertion of a failure to accommodate claim does not relieve the plaintiff of this requirement. *See Place v. Zoning Hr'g Bd. of City of Nanticoke*, 714 F. Supp. 3d 471, 481 (M.D. Pa. 2024) ("Plaintiff suggests that its claim need not allege intentional discrimination, because it is based on a failure to accommodate. But to the extent Plaintiff seeks compensatory damages under Title II, it does need to allege intentional discrimination.") (citations omitted).[16]

Thus, the plaintiff's ADA and RA disability discrimination claims for compensatory damages will be dismissed for failure to state a claim.

---

[16] A failure to accommodate may be sufficient to show a *violation* of Title II of the ADA or Section 504 of the RA, which may in turn support an award of injunctive relief, but the particular remedy at issue here— an award of compensatory damages—requires a showing of intentional discrimination under a deliberate indifference standard, no matter what theory of liability is advanced by the plaintiff. *Cf. S.H. ex rel. Durrell*, 729 F.3d at 262.

### C. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, based on the facts alleged in the amended complaint, it is clear that any further amendment would be futile with respect to the plaintiff's disability discrimination claims under Title II of the ADA and Section 504 of the RA, particularly in light of the plaintiff's failure to cure the pleading deficiencies of his original complaint. Thus, the amended complaint will be dismissed *without* leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the amended complaint will be granted, and the plaintiff's amended complaint will be dismissed with prejudice.

An appropriate order follows.


Dated: August 21, 2025                *s/Joseph F. Saporito, Jr.*
                                      JOSEPH F. SAPORITO, JR.
                                      United States District Judge